Good morning. May it please the court, my name is Joshua Siegel. I represent the appellants in cases 10-17520 and 12-16412, Maryland Square LLC. Just in terms of division of time on the appellant side, I'll be speaking first on those two cases, taking approximately 10 minutes. Whether I save time for rebuttal, we'll see. And then Attorney Lucht will follow, representing Shapiro Brothers Investment Company and Melvin Shapiro individually on the other three appeals. For the appellees, I understand that Attorney Tanner will represent the state arguing first on two of the appeals, 12-16409 and 11-15174, followed by Attorney Lawrence representing the Kishner defendants in two appeals, and then Attorney Mehta representing the state in the last two appeals. I do not know the time allocation on that side. But focusing first on the Maryland Square LLC appeals by way of background, and it's important background for both appeals, the Maryland Square Shopping Center is a shopping center in Las Vegas that used to house a dry cleaner. The dry cleaner closed in approximately the year 2000. My clients, Maryland Square LLC, purchased the property in the year 2005. The dry cleaners disposed of chemicals improperly. There is a plume underground that affected houses near miles away, also in Las Vegas. In 10-17520, which is the RCRA claim brought by the homeowners, this court should reverse the district court's grant of summary judgment against Maryland Square LLC, simply because it was awarded on improper grounds. Maryland Square LLC did not contribute to the disposal. And the court held that it did, because as one of the Maryland Square defendants, it benefited from the rents on the property from the dry cleaner. And in point of fact, you never leased to the dry cleaner. Never leased to the dry cleaner. So what do we make of the fact that there's an argument that in the demolition of the mall that contaminants were released or the situation was exacerbated? The disposal, Your Honor, that took place was the disposal of the chemicals years earlier. And furthermore, that was not an issue raised or argued on summary judgment below. Right. And just as a court is not obligated to comb through the record and find any fact that might defeat summary judgment, we have the statement of undisputed facts so that the party opposing summary judgment also does not have to dispute every fact whether or not they believe it to be material in the record. It was not this idea that Maryland Square LLC's destruction of the property contributed to the furtherance of the pollution was not raised in those statements of undisputed facts. And therefore, it was reasonable for Maryland Square LLC not to comb through the record and find every fact that may or may not contribute to its liability that it believes not to be material. And the court didn't consider it below, and my client didn't have to oppose it below, to not be grounds for affirming summary judgment. So your argument is that even if viable, the record's not developed sufficiently. Yes, Your Honor. Do I understand that basically your argument is that there was a clear factual error by the judge about when your client owned the property, when the dry cleaner was leased? Yes, Your Honor. And then you attempted to bring that to the judge's attention in a, what, a motion to reconsider? Yes. And what happened? Did the judge decline to reconsider it? The judge declined to reconsider saying that he was divested of jurisdiction because other defendants had already filed the notice of appeal. And the problem with that is what? The problem with that is that if this court does not have jurisdiction over Maryland Square LLC because Maryland Square LLC had not filed an appeal, then presumably jurisdiction remains with the district court over Maryland Square LLC. And so to the extent that one party can file a notice of appeal, divesting all other parties of jurisdiction in the district court, or even a number of parties can do it, divesting a single party of jurisdiction, is an illogical result. So if you're right about that, we should, what, tell Judge Jones to go back and consider your motion to reconsider? Is that right? Yes, Your Honor. Or alternatively, because the issue is likely to resurface, you can rule on it here as a matter of judicial efficiency. This all probably would never have happened if when the company was formed, instead of calling it Maryland Square LLC, we called it Acme Co. or something else. I think it's a simple example of poor choice in naming when dealing with an issue like this. Turning now to the second appeal, the 12-16412, regarding the CERCLA claim against Maryland Square LLC, we argue first that CERCLA cannot be constitutionally applied to Maryland Square LLC in this circumstance. And although the Supreme Court in Lopez and Morrison dealt with facial challenges to statute under the Commerce Clause, the analysis should apply also in as-applied challenges. And Lopez states and identifies that there are three permissible areas that Congress can legislate under the Commerce Clause. And I think there's no doubt that CERCLA was passed under the Commerce Clause power. The first is channels of interstate commerce. And despite the motion for judicial notice at issue, there is no evidence that the plume is in interstate waters. And the statement that it is undisputed that the plume is heading toward the Flamingo Wash and the Las Vegas Wash just does not support it in the record. And it's not the kind of information that a layperson can know based on looking at a map of the plume. This is something that requires an expert to tell us where a plume of chemicals are going to go underground. This is not within the knowledge of the layperson. So we submit that regardless of how this Court handles the motion for judicial notice on the documents submitted, the underlying fact that an undivided DEP is trying to establish just is not established in the record. So insofar as the channels of interstate commerce are not affected, likewise, instrumentalities of interstate commerce are not affected. And this application of congressional power under the Commerce Clause deals with activities having a substantial effect on interstate commerce. And in making that analysis, Lopez counsels that we look at commercial activity, we look at the express jurisdictional element limiting the reach, we look at the express findings demonstrating connection to interstate commerce, we look at the attenuation between the regulated link and interstate commerce. And the idea that the argument that police are advancing really crystallized. It's not as clear in my brief, but as I was preparing for today, it really crystallized that there could be no as-applied challenge under CERCLA. If, excuse me, under the Commerce Clause. If a statute is valid under the Commerce Clause because it regulates commerce, then it must be valid always under the Commerce Clause. Let me ask you this. Suppose we don't buy the Commerce Clause argument. Where do we go from there? We argue that the bona fide prospective purchaser exception applies to Maryland Square LLC here, both on the facts that were presented by the undivided DEP in the underlying case, and their motion as well as based on this supplemental affidavit filed on our behalf, to be filed with our reply. Judge Jones said the problem with that argument is that you didn't support it with evidence when you should have supported it with evidence. Judge Jones's opinion ignored this affidavit and didn't address, there was no motion to strike explicitly made, at least on paper. Judge Jones did not rule on a motion to strike. He simply said there was no evidence when there was evidence in the record. If he, we argue the evidence in the record was sufficient and that even the evidence submitted by the plaintiff, the Nevada DEP, was sufficient to set forth, at the very least, a factual question as to the elements of the bona fide prospective purchaser requirements. An exception. He says you didn't bring this up until you filed a cross motion and then submitted an unnotarized affidavit. Yes, Your Honor, that is when it was raised to the cross motion in opposition on summary judgment. Is he wrong about that? He was wrong. We contend that we did not raise the, that we did not have any evidence. That is when we submitted the evidence, was in our reply on our, in the briefing. And what I'm getting at is he's basically saying it's either untimely or you didn't do it right, you didn't dot the i's and cross the t's. Is he wrong about that? We contend that what we did was sufficient. He addressed the issue. And therefore, I think it's reasonable to say that he accepted an amendment to our answer or treated it as if we had raised it on the merits and that he was wrong that there was not evidence in the record. Well, it is hearkening back to what we said before. It is not under oath, notarized, right? It is not, Your Honor. And the practice in Massachusetts, as a Massachusetts attorney I can attest, is that affidavits are often not notarized, especially ones made by counsel. But it wasn't even witnessed, was it? It was not. And that's the, that is the practice in Massachusetts. For summary judgment, whether or not it's admissible at trial in my time, if my brother is almost up, is that for summary judgment, it's is an issue of fact, we contend. And that if it's not admissible at trial, that's fine. We'll have somebody testify to the facts. Well, the rule in this circuit is you have to have admissible evidence, generally speaking, to be considered for summary judgment. Because of federal rules. And since that's the way it was decided, that was my next point. We contend that an unsworn statement, although stated under the penalties of perjury, is sufficient to create, to create rise to an issue of fact on that. At least in Massachusetts. At least in Massachusetts, certainly for a Massachusetts attorney. And on the grounds stated in the brief, as well as the arguments here, we ask that you reverse the district court. Thank you. Note to speak to Chief Judge Wolf, or former Judge Wolf. Good morning. May it please the court, my name is Greg Lucht. I represent the Appellant Shapiro Brothers Investment Company, otherwise known as SBIC, and Melvin Shapiro. I would like to reserve two minutes for a call, if I could. For purposes of the day, there's three appeals involving my clients. And where I'm going to focus my attention is as follows. First, with respect to the summary judgment rulings in favor of who has been referred to as the Kishner defendants, or the prior landowners and the lessors of the site. As well as the claims asserted by NDEP, under circle and state law claims. And the reason for that challenge is the application under Rule 56, and how that interplays with the claims asserted. I will then spend the time also talking about the issuance of an injunction against SBIC, even though no party had ever filed a motion seeking such relief. I think it's important, because there is a common thread that runs throughout all three appeals. That common thread is the misplaced reliance by not only the appellees and intervenors, but also the lower court, on a prior decision on summary judgment in favor of the plaintiffs against the Kishner defendants. That ruling, and why it's misplaced, is the fact that it has transformed without any evidentiary support. And what we know is that order originally stated that SBIC operated a dry cleaning facility at the site from 1968 to 1984. A separate entity, then from 1984 to the approximate year 2000, operated a dry cleaning facility at the same location. The court then recognized that it was unknown when TCE was released into the ground. And even more importantly, after the court granted that summary judgment motion in favor of the plaintiffs, the court modified the order to specifically state that it did not apply to SBIC or Melvin Shapiro, because there was no motion filed against them. Now, the misplaced reliance comes in is because over time, and without any evidentiary support, that order turned into a conclusion that stated that SBIC released TCE into the ground from and after the first time they started operating the site. That's simply not supported by the evidence in this case. Now, that order and that transformation is what has been relied upon by the parties and the appeals here. So we have a- Sorry, I need some help with the facts here. I understood, or I thought I understood, that everybody agreed that there was a spill of this chemical on the floor of the dry cleaner. Is that- That is true. When did that occur? There is evidence in the record that in 1982, there was a spill onto the floor. I believe also there was evidence that, while not to quantity or to time, that there were times when TCE did spill onto the floor. And did your client operate the laundry at that time? Yes, we did, Your Honor. So what's the point you're making there? Well, the point I'm making, and it's important, is that there is a timing issue. And, well, let me step back. The reason why it's a problem is that there has to be a connection between the spill and the plume into the environment. And here, the timing issue is very important. The NDEP primarily would have the court believe that a spill onto a floor without any other connecting facts. So you say there's a big kind of drain where this would go into the ground. Well, the evidence in the record is that there was a trench drain. There is no evidence in the record of where that drain is located with respect to the equipment. Yes, Your Honor. But there was no change in the way the building was built and the way that the drainage took place. Was there during the course of? Not that I'm aware of. All I'm indicating is that there is nothing in the record indicating any characteristics of the drain, the location of the drain, what happened after the spill. So, yes, we admit that there was. Yeah, I mean, it's a fair inference that the reason you have a drain is so that if liquid's on the floor, it'll drain out. I mean, that's why people have drains. Isn't that something that? People have drains. But you raise an interesting point with respect to inference. And that is important here because the interplay between Rule 56 and for summary judgment and the claims for relief that are being sought. And the reason why is that under Rule 56, when the party who has the burden of proof at trial, which here are the Kishner defendants on their indemnification claim and NDEBT on their circle and state law claims, when they have the burden of proof at trial, then for Rule 56, they have to prove each element of their claim with undisputed facts. And under Rule 56, there is no permission of the court to have an inference in favor of the moving party. Well, that's all true. But do you have an alternative causal hypothesis about how the plume developed? I do not have one to share with the court. So we have a spill. We have a plume. And what are we guessing? What we have, Your Honor, is this is where it becomes important in regard to timing, in regards to the fact that there was another entity that operated the site. Because there is, after 1984, there was 16 years where a dry cleaning operation was performed. The 2000 is when there was detection. So simply having a spill on a floor with nothing more. That's true. That's the way the statute operates. This is the problem with the spills. You never can say this happened on December 2, 1987. Well, that may or may not be true. There are times when there are connections. But I think that there is importance of a Rule 50. That's why Rule 56 is important here. Right. In the case law. But what evidence, I mean, this isn't a river where you have a lot of polluters that are putting it in. You have one source of the PCE, right? And that source is your client's dry cleaning. I don't believe that's true, that there's only one source. But what's in the record? I mean, that's why I asked you, do you have an alternative causal hypothesis? Well, the other hypothesis is speculation not supported by evidence in the record, which is that there was other operations at the same location. And that the burden of proof lies with, first of all, the Kishner's on their indemnification claim. That's actually separated distinct from CERCLA elements. But also with respect to NDEP and the claims that they've asserted. Because I think what NDEP is trying to do is to have a broad sweep that the fact that a spill onto a floor without a connection to into the environment is enough. The case law that they even cited, I think, shows why that is improper at this stage. And that is Lincoln Properties. Lincoln Properties connected the PCE from the time it came in, step by step, what happened to get it into. Right, so what did you do in opposition to summary judgment to say that there was a genuine issue of fact? What evidence did you submit? Well, with respect to the CERCLA claim and the NDEP. To say that this isn't our spill, we aren't the source. What we did, Your Honor, was there was evidence about all of the experts regarding the timing of it. NDEP had indicated that by using an employee expert that the spill happened at either 19 or 57 years from the time there was a detection in a well. And that then somehow vacated into the Shapiro Brothers operation. What happened was we inserted through declaration and evidence contesting those conclusions of the expert regarding the reliability of the data that was used, the methodology, the failure to address certain factors regarding the speed of groundwater. So that is where we interjected an issue of fact in CERCLA. So in the most favorable factual circumstance, tell me, how would you describe the timing of this? I'm sorry, I missed up the first part. Under the factual circumstance most favorable to your client, when did the spill become a plume? Or form a plume? The facts are that it did not happen. The connection did not happen during 1968 or 1984. That is a gap in evidence that exists in the case of which is a burden of proof for the appellants and intervenors. I thought you told me it happened in 82. Did I misunderstand you? No, Your Honor, you did not. There was a spill onto a concrete floor without any other evidence, but there was a spill onto a concrete floor. The evidence is a trench drain on the floor, and there's evidence that there are underground pipes connected to the drain. The record of the evidence with respect to the drain is a one-sentence reference in a report talking about that the data suggests that it came through the trench-style drain. We still have no idea where the trench-style drain is, and we feel that the burden of proof under Rule 56 at this time is on the party with the burden of proof at trial, and that they did not satisfy that burden. Your showing was inadequate. Yes, Your Honor. Not that you made a contrary showing, but theirs was inadequate. That is correct, Your Honor. I see that my time is up. Thank you. Thank you. Ms. Tanner. Good morning, Your Honors. Carolyn Tanner, and may it please the Court, Carolyn Tanner, Senior Deputy Attorney General for the State of Nevada, Division of Environmental Protection. I'm going to take approximately 5 minutes on 126409, and I have about one sentence to add to 11-15174. Before you today, there is one concise issue regarding the liability of appellant SBIC on whether, and that is whether or not the spilling of PCE repeatedly during its 16-year lease and on one occasion of approximately 100 gallons onto the floor is a disposal as defined by CERCLA. Every other element that the State must establish in order to produce a prima facie case under CERCLA 107 is undisputed. CERCLA is designed for the protection of health and the environment from serious contamination, and thus it is given broad interpretation by the courts to carry out that purpose. Pursuant to 107, SBIC's dry cleaning operation is a facility that's undisputed. It was one that was constructed specifically to the specifications of SBIC for that dry cleaning facility. That construction included a drain system that had trenches that were designed to convey liquid spilled upon the floor to a central floor drain. That central floor drain inside the building is the undisputed point source of the release. No one contends that this is not a release from the facility. The sole issue is whether or not the act of spilling onto the floor is one that may cause PCE to enter the environment. And thus, that definition incorporates both a release and a threatened release. It doesn't have to enter the environment, but may it enter the environment. It is also undisputed that the State incurred response costs to address the release. So the only question is whether SBIC's admitted actions as a prior operative of spilling actually was in such a manner that it may enter the environment and thus a disposal. We know the answer to this is yes, because, in fact, PCE at some point in this facility was spilled, dumped, or stored in a manner which it did release to the environment. The PCE left the building. Thus, it was the simple position of the State before the district court, and there is no evidence to the contrary that the drain system simply worked as designed. And regardless of whether or not any subsequent operator, DCI or the Johnson Group, also discharged PCE, SBIC did, in fact, release or, at minimum, threatened to release PCE into the environment and is thus liable under CERCLA and State law. Our position was presented to the district court in a very well-pled motion for summary judgment and pursuant to Rule 56e, as explained in Anderson v. Liberty Lobby, and as repeatedly noted by the district court and you here today, the burden then shifted to SBIC to provide a contrary theory that would allow SBIC to prevail at trial. SBIC simply refused. As noted in Anderson, the nonmoving party may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. And yet on this issue, that is exactly what SBIC did. Sotomayor, can you help me with what the record shows with respect to the position taken by the parties with respect to the tearing the building down and what effect that had on the environment or the liability of the owners, operators at that time? I think that Ms. Maida can better address that because that really addresses Maryland Square as the current operator. If you don't mind, I'll punt that to her. Thank you. That's fine. I just want to know who's going to be covered. Yes. She definitely has an answer for you on that. Okay. How much money is at stake for the State? I'm sorry? How much money is at stake for the State, approximately? Well, we did get our past costs, which are, I believe, the final amount was in the realm of $400,000. But going forward, we don't have a complete plan yet. I mean, we've seen estimates anywhere from $7 million to $10 million, upwards of $25 million. That's okay. I just wanted to move all apart. Yes. We find it significant. Yes. So the SBIC asked this Court to find that spilling PCE, simply because it was in the environment. And they basically asked the District Court, and you here today, to suspend disbelief of where that PCE went once it was on the floor. And when you're talking about approximately two 55-gallon drums of PCE immediately spilled onto the floor, that's a pretty stiff issue to ask the Court to suspend disbelief. So we know the action of spilling PCE onto the floor was at least, at minimum, a threatened release, and that's their libel. Now, they rely heavily on Carson Harbor and 3550 Stevens Creek Associate v. Barclays for the conclusion that a spill of PCE was not into the environment. And while Carson Harbor does cite that language, into the environment, taken directly from Circula Section 103, it really doesn't analyze what into the environment means. And moreover, it doesn't involve a factual scenario where a hazardous waste spill was actually spilled within the confines of a building. And similarly, 3550 Stevens Creek Associate is also unpersuasive because it's been limited to its facts that asbestos used as part of the building structure itself, insulation and fire retardation, was not a disposal of a hazardous substance or waste, and it remained on the inside of the building. That's not the case here. Kagan. Whereas, because we have it draining out. We know that it left the building. So the cases cited in our response brief address the specific issue. Is a spill of a hazardous substance within the confines of a building installed with floor drains a disposal that may enter the environment? Yes, absolutely. And while absent a witness of it actually going down the drain, we understand that's circumstantial evidence, but that's no matter. The Anderson case makes clear that the Court can consider the plausibility and reasonableness of inferences arising from circumstantial evidence. And with SBIC's refusal to present any alternate theory to the Court, there really is no other inference that you could draw other than it went down the drain. Thus, those inferences by the district court were reasonable and appropriate. The term disposal and release are not mutually exclusive. They could happen at the same time. They could happen independently. Our position is there's enough to show that it happened almost simultaneously, at least with the 100-gallon spill. But we don't have to show that. So there's sufficient evidence in the record to find that SBIC actually disposed of PCE and contemporaneously caused that release. But at a minimum, their spilling of essentially 255-gallon drums onto the floor was a threatened release. Okay. You used about 7 minutes, so if you want to get to your other two. Yeah. The only other thing I would say on 11-15174, we did file a brief and intervention solely on the jurisdiction issue. And so if the Court is inclined to reverse on the RCRA injunction, we, the district court did award an injunction or grant our motion for summary judgment on our State court injunction, but it was never issued because we had the RCRA injunction in place. We would simply ask for a remand of that issue so that the judge could go forward and issue the injunction under our State law in place. Very good. Thank you. Thank you. Good morning, Your Honor, Your Honors, Honorable Judges of the Ninth Circuit. Thank you. Thank you, counsel. May it please the Court. John Lawrence on behalf of the Kitchener defendants. I'm here to talk about the 7-4 case and the 7-6 case. Very briefly, I'll start with the 7-4 case where my esteemed counsel just left off. My points there are fairly brief. The purpose of RCRA is to allow the Court to charge those responsible with the remediation costs for a discharge of pollutants into the atmosphere. My client's liability was not based on their discharge of anything. It was derivative in nature. What the district court did was take a look at who was responsible for the actual discharge. And Justice Shapiro, Judge Shapiro, I should say. I did a little State court practice myself. You make a good point. There was no other dry cleaner in the shopping center. And there was no other potential source for these contaminants. And these contaminants, PCE, is not a natural occurring phenomenon like asbestos. So the natural inference is a real inference and a supportable inference, and the Court was correct. So the proper responsibility is to arrive at an enforcement tool which requires all those responsible to participate in the remediation of the property. And the addition of the Shapiro defendants to the injunction is based not only on the Court's inherent power to craft an appropriate order that accomplishes the ends which it's charged to accomplish, but there is or has been no lack of due process here with respect to SBIC. SBIC was at all times party to the litigation, with full opportunity to litigate whatever issues were there. They were expressly put on notice by the trial court three months before the actual injunction was entered that the Court was contemplating putting them into the injunction, charging them with the responsibility. They actually filed objections to that proposal to the Court, made by the Court, both on the merits and on the procedural issue of the jurisdictional issue. Those objections were considered and rejected. At this point in time, my client's cross-claim against SBIC had already been adjudicated in its favor. Therefore, there was a factual basis, drawing down from the original summary judgment in favor of the homeowners against my clients and then through my clients against the actual operators. And SBIC at all times had motive, opportunity, and the means to bring forth to the trial court any alternative theory, as Justice Shapiro has asked her today. Never did that. They've relied on procedural technicalities to try and avoid the liability for the very spill, as my esteemed counsel points out, 55-gallon, 255-gallon crumbs. So how about the 7-6 case? On the 7-6 case, there was clearly discharge. There was clearly in each of the two leases indemnification provisions. In the 69 lease or the 68 lease, the indemnification provision required that they not damage the property. Our position there is clearly that the release of pollutants onto the property, the cement floor, through the drains and into the actual real property, is a violation that they need to address. Clearly, under the 82 lease, we're talking about a violation of law, both Federal and the State law, which requires indemnification. They try to get out of the indemnification obligation under the 68 lease by saying, well, that was extinguished by the 82 lease. But that's contrary to common sense, it's contrary to public policy in the case of latent defects, I would argue, that one cannot hide, conceal a spill, and then say that because there was a subsequent lease, which is a subsequent lease which said the prior lease has expired, relieves me of my obligation to indemnify you for the spill that I created. I think that's true. Roberts, we have a 68 lease and an 82 lease. That's right. And then we have Melvin Shapiro's personal guarantee executed in 1984. That's right. My understanding of the rule is that guarantees are prospective only unless they specify otherwise. Is that correct? That is correct. I would not argue with that principle of law. But what we don't know is whether, again, as Justice Schrader points out, there was no change in the construct of the property. That's not what I'm asking. I mean, he's undertaken a contractual obligation effective from 1984 on. That's correct. I would not argue that the guarantee is retrospective. But didn't that basically what the judge did? Yes. Okay. And I would not argue with him at the time, quite honestly. You know, that being the case. So you're in essence conceding that the guarantee runs only prospectively? Right. But my argument is that the SBIC was operating under both leases until it was assigned to the subsequent lessee, and that the spill clearly, the major spill clearly occurred during their ownership and operation of the drift. Thank you. Anything further? No.   Thank you, Mr. Chief Justice, and members of the Nevada Division of Environmental Protection, I'm addressing the two Maryland Square cases, which are 12-16-412 and 10-17-520. I'd like to first address your question about the demolition of the property. The evidence in the record is at our supplemental excerpt of record, page 60, which is an excerpt of the expert report, the homeowner plaintiff's expert report, which basically said demolition of the building and leaving the contaminated soil in place exposed that soil to precipitation, which could then mobilize the contaminants into groundwater. So how do you get summary judgment on that? The ---- I mean, if that's the alternative basis of sustaining the district court, they weren't on notice of it. It wasn't the basis of the district court decision. How can we base the case? How can we affirm the summary judgment based on the demolition and subsequent increase of the problem? That exacerbation of the problem was addressed to the Maryland Square LLC's bona fide purchaser argument. Under that argument, not only did they have to conduct all appropriate inquiry, but they had to exercise due care with respect to the contaminants. They had to stop continuing releases. They had to prevent any future threatened release or to prevent or limit the threat to the environment, public health, or safety with respect to a previous release. Granted, but the question then is why isn't there a genuine issue of material fact about that? Because they never contested it. They don't ---- it's undisputed that they demolished the building and then they left the soil in place for five years, exposing it to precipitation and allowing it to mobilize into the groundwater. The groundwater is the exposure pathway to the homeowners. Right. But, you know, we deal with disputed issues of fact, not disputed issues of expert opinion. You're relying on an expert opinion that says this. Why isn't they entitled to take the facts and get their own expert and contest it? They had the opportunity, Your Honor. They never provided any counteropinion in the summary judgment briefing. They had every opportunity to do so. Didn't file any ---- make any showing under 56F that they wanted additional discovery or opportunity to provide additional evidence? That is correct, Your Honor. They did not. What they've argued here is that they were not on sufficient notice. You contest that? That they didn't have sufficient notice that it was an issue? Absolutely, we contested. It was brought up in our opposition to their cross motion for summary judgment. So certainly they had notice of it. In addition, in the RCRA case, that same issue, and that's the 10-17-5-2-0 case, that same issue was before the court. That expert report was attached to the briefing on summary judgment in that case. And so they certainly were on notice that it was an issue with respect to the RCRA claim that they had contributed to the plume by demolishing the building and allowing the exposure of the contaminated soil to the elements, basically. And that was ---- that briefing took place well before our motion for summary judgment on the CERCLA claim. Are there other questions on that? May I? I just had one, and that is the reasonable step requirement. The reasonable step? I'm talking ---- I'm looking at the bona fide purchaser exception, the reasonable step requirement. Why isn't reasonability a question of fact? The reasonable ---- I'm sorry. Well, I'm talking about the reasonable step requirement in satisfying CERCLA's reasonable step. I'm sorry, the reasonable step requirement under CERCLA. The ---- my understanding is that under CERCLA, there's ---- there's, for the bona fide purchaser protection, there is ---- Right. I'm putting my question in artfully, but I think you understand where I'm going. There is a requirement to conduct all appropriate inquiry. Right. To notify the appropriate authorities if there is an environmental problem and to exercise due care with respect to any environmental hazards that are discovered on the property. The ---- there is no issue with respect to reasonableness because they didn't provide any evidence that they did any of those things. My takeaway on the reasonable ---- I'm sorry, the bona fide prospective bona fide purchaser exception is it just wasn't a big focus of the litigation. I mean, the parties didn't seem to spend a lot of time on it, but maybe my ---- I misperceive it. I just didn't think the record was very well developed on it, honestly. So that gives rise to my pause on summary judgment with respect to the issue. Yes, Your Honor. And I agree with you that the record is not well developed with respect to that issue. One of the issues that we raised in our briefing was that Maryland's court LLC didn't even state it as a defense, as an affirmative defense, in its answer. So it ---- They had the burden to take it to establish. Yes. And, yes, thank you, Your Honor. Also, they ---- the burden is on Maryland's court LLC because it is an affirmative defense to establish by a preponderance of the evidence that they are a bona fide prospective purchaser, and they failed to do that. They, in their opposition and their cross-motion for summary judgment, they failed to provide any evidence whatsoever, whether it was an admissible affidavit or not. They didn't provide an affidavit until their reply, at which point the Division of Environmental Protection didn't have an opportunity to respond to that. We did object to it at the hearing, but we didn't have the opportunity in the briefing to respond to their bona fide prospective purchaser affidavit. Okay. Your time has expired, but we'll give you a little more time to add a couple more points you wanted to make. Yes. Thank you, Your Honor. I appreciate that. Just with respect to the Commerce Clause argument, the circuit courts that have addressed the ---- that as-applied challenge have rejected that as-applied challenge. I believe that's the Eleventh Circuit and the Second Circuit. I note this Court in an analogous case rejected an as-applied challenge to the Endangered Species Act as it pertained to an endemic species of fish. So long as the general regulatory scheme affects commerce, substantially affects commerce, the de minimis nature of an individual's circumstance is not material. And that's the situation here. And moreover, water, surface water and groundwater are both articles in commerce. Waste has been recognized as an article in commerce. And whether or not the Court wants to take judicial notice of where the plume is headed, it is heading toward ---- Heading toward the border, is what you're saying. Yes. Heading toward the border. If not there yet, then that's his point. Thank you very much for your argument. Thank you. I'll give you two minutes for rebuttal. Thank you, Your Honors. Just briefly, I want to address the comment regarding from MDEP regarding a threatened release. I don't believe that there was a threatened release here that they can seek cost for. And the reason why is we know that there was detection in 2000. Later on is when work and the cost started to build with MDEP. So what they were responding to was a release. And we maintain our position with respect to the timing and the importance of that. But what they still have to connect under a threatened release, they have to connect what they're ---- the work and cost that they incurred to that threatened release. How they can go back to a time back in the 80s when there was no ---- there's no evidence of work or cost being done back in the 80s? So I think by using the threatened release, they're trying to use that as a way out. I don't think that it applies here when those costs that they've incurred are in regards to an actual release and they can't use the threatened release in order to tie to SBIC. With respect to the 15176, first of all, obviously, I appreciate the concession with respect to the personal guarantee, so I won't address that. And then finally, with regards to the injunction, I place emphasis on the fact that there was not a motion sought for injunctive relief against SBIC. The case law cited by the Kishner defendants is distinguishable as indicated in the briefs. Yes, SBIC did raise objections, but we did not have a fair opportunity to see how the argument was going to be presented as to why SBIC was liable under RECRA. And therefore, we were denied the opportunity to properly respond. Thank you, Your Honor. Thank you. We'll give you a minute. Briefly on the Commerce Clause point, Your Honor, Justice Kennedy in his concurrence in Lopez stated that Congress can regulate in the commercial sphere on the assumption that we have a single market and a unified purpose to build a stable national economy. That was quoted with approval in Morrison. There's no market in disposing chemicals down the drain here. The APELI has identified no market. And what RAFE stands for and what the subsequent cases stand for is the proposition that for there to be regulation of an interstate market, interstate effect is okay. But here, Congress can regulate interstate spills and interstate pollution just fine without also regulating intrastate spills. And to hold otherwise would be to say that there can be no as-applied challenge to Commerce Clause litigation, which flies in the face of many, many statements by the Supreme Court and this Court that as-applied challenges are preferable to facial challenges. And so if a statute is facially okay under the Commerce Clause, the implication that it is always okay under the Commerce Clause just doesn't withstand the jurisprudence of as-applied challenges. Thank you. The case just heard will be submitted for decision. Thank you all for your arguments today.
judges: Schroeder, Thomas, Silverman